IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIO TILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-238 |
| | ) | |
| | ) | |
| ANDREW SAUL, ACTING | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

O R D E R

AND NOW, this 31st day of March, 2020, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 12), filed in the above-captioned matter on July 19, 2019,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 10), filed in the above-captioned matter on June 19, 2019,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below, and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

I. **Background**

On December 18, 2014, Mario Tiller protectively filed a claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and on February 19,

1

2015, he protectively filed a claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. (R. 381-89, 390-95). Specifically, Plaintiff claimed that he became disabled on July 17, 2013, due to schizophrenia, depression, brain injury, and paranoia. (R. 408).

After being denied initially, Plaintiff sought, and obtained, a hearing on September 20, 2017, before an Administrative Law Judge ("ALJ"). (R. 235-77). In a decision dated December 15, 2017, the ALJ denied Plaintiff's request for benefits. (R. 12-24). The Appeals Council declined to review the ALJ's decision on January 10, 2019. (R. 1-8). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the

[Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence— particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" Id.

A disability is established when the claimant can demonstrate "some 'medically determinable basis for an impairment that prevents him [or her] from engaging in any substantial gainful activity for a statutory twelve-month period.'" Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001) (quoting Plummer, 186 F.3d at 427 (internal citation omitted)). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic

work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. §§ 404.1523, 416.923.

### III. The ALJ's Decision

In the present case, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date, July 17, 2013. (R. 15). The ALJ also found that

Plaintiff met the second requirement of the process insofar as he had certain severe impairments, particularly, depression, anxiety with panic, PTSD, bipolar disorder with psychotic features, substance abuse, schizophrenia, asthma, obesity, back, hip, hand and knee sprain/strain with osteoarthritis and status-post injuries following a bus accident, including a small calcaneal fracture of the right ankle. (R. 15). The ALJ further concluded that Plaintiff's impairments did not meet any of the Listings that would satisfy Step Three. (R. 15).

The ALJ next found that Plaintiff retained the RFC to perform light work, except that he must be provided the option of alternating sitting and standing, changing positions every hour, losing two minutes of productivity during the hour; can occasionally climb, stoop, kneel, crouch, crawl and balance and can occasionally tolerate pulmonary irritants, dust, fumes, gases, and hot and cold temperature extremes; is limited to simple, routine, repetitive tasks that are not fast paced, involving only simple work decisions, and cannot interact with the public and is limited to occasional interaction with supervisors and co-workers. (R. 17).

At Step Four, the ALJ found that Plaintiff was unable to perform any past relevant work, so he moved on to Step Five. (R. 22). The ALJ then used a vocational expert ("VE") to determine whether or not a significant number of jobs existed in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as laundry classifier, garment sorter, and router. (R. 23). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 23-24).

## IV. Legal Analysis

Plaintiff argues that the ALJ's decision is not supported by substantial evidence for a number of reasons. While the Court does not fully agree with the arguments Plaintiff sets forth,

it does agree that remand is warranted in this case. Specifically, because the Court finds that the ALJ failed to address adequately the opinion of consultative examiner John Bixler, Ph.D., and further failed to provide an adequate explanation for his handling of the limitations opined by Dr. Bixler in formulating Plaintiff's RFC, it is not apparent to the Court on what evidence the ALJ relied in formulating the RFC. Thus, because the Court cannot determine whether the RFC, and the ALJ's overall decision to deny Plaintiff benefits, is supported by substantial evidence, the Court will remand the case for further consideration.

RFC is defined as "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Fargnoli, 247 F.3d at 40 (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)); see also 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

Dr. Bixler's opinion, formulated after a consultative examination of Plaintiff and provided in the form of a lengthy written "Psychiatric Evaluation" accompanied by a mental RFC questionnaire ("Medical Source Statement of Ability to do Work-Related Activities

(Mental)"), includes various findings regarding Plaintiff's limitations in functioning. (R. 476-84). Specifically, Dr. Bixler opined that Plaintiff has marked limitations in carrying out complex instructions, making judgments on complex work-related decisions, and interacting appropriately with co-workers, and moderate-to-marked limitations in understanding and remembering complex instructions and interacting appropriately with the public. (R. 482-83). Moreover, Dr. Bixler found that Plaintiff has moderate limitations in understanding, remembering and carrying out simple instructions, interacting appropriately with supervisors, and responding appropriately to usual work situations and to changes in a routine work setting. (R. 482-83). Dr. Bixler further explained in his Medical Source Statement that Plaintiff's schizophrenia and paranoia make social interaction difficult, and combined with substance abuse, increases the potential for misunderstanding and poor reception of criticism. (R. 483).

The ALJ's decision, however, indicates that "little weight" was given to Dr. Bixler's opinion in determining Plaintiff's RFC. (R. 21-22). By way of explanation, the ALJ noted that he afforded little weight to Dr. Bixler's assessment "as his limitations appeared to [be] primarily attributed [to] the claimant['s] substance abuse." (R. 22). The ALJ continued, "Specifically, following his examination, Dr. Bixler stated the claimant's schizophrenia and paranoia, combined with substance abuse, would lead to social problems and the potential for misunderstanding and poor reception of criticism." (R. 22). The ALJ concluded that Dr. Bixler's assessment thus "does not represent a longitudinal view of the claimant's ability to function." (R. 22).

Upon review of Dr. Bixler's assessment, the ALJ's decision, and the record as a whole, however, the Court finds that the ALJ's analysis does not provide an adequate rationale for his rejection of Dr. Bixler's findings. The Court does not agree that Dr. Bixler's assessment appears

7

to primarily attribute Plaintiff's limitations to his substance abuse. To the contrary, Dr. Bixler explicitly stated in his opinion that the results of his examination appear to be consistent with psychiatric <u>and</u> substance abuse problems. (R. 480). The ALJ himself noted that Dr. Bixler stated in his Psychiatric Evaluation that "the results of the examination were consistent with psychiatric and substance abuse problems and may significantly interfere with the claimant's ability to function on a daily basis." (R. 21-22, 480). Moreover, Dr. Bixler found in his Psychiatric Evaluation that Plaintiff will not be able to manage his own funds "due to his psychiatric condition and drug and alcohol usage," and he described Plaintiff's prognosis as "Guarded, given the severity of psychiatric symptoms in combination with drug and alcohol usage." (R. 481).

Thus, the Court does not agree with the ALJ's contention that Dr. Bixler primarily attributes Plaintiff's limitations to his substance abuse, as his opinion clearly and repeatedly states that he attributes Plaintiff's limitations to <u>both</u> his psychiatric problems and his substance abuse problems, and nowhere does Dr. Bixler specify that Plaintiff's substance abuse problems predominate over his psychiatric problems. As the Court concludes that the ALJ's decision does not accurately characterize Dr. Bixler's opinion, it also finds that the ALJ's justification for giving little weight to the limitations opined therein by Dr. Bixler is insufficient.

Accordingly, because the ALJ does not adequately explain his treatment of Dr. Bixler's opinion, it is not apparent to the Court whether the ALJ's formulation of Plaintiff's RFC, and his decision as a whole, is based on substantial evidence. While the ALJ was certainly not required simply to adopt all of the findings in Dr. Bixler's opinion, he was required to explain adequately his basis for rejecting them if he chose to do so. See <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir. 1993) (explaining that, when conflicting evidence exists, an ALJ may choose whom to

credit, but "cannot reject evidence for no reason or for the wrong reason" (internal citation omitted)); Plummer, 186 F.3d at 429 (stating that an ALJ "must consider all the evidence and give some reason for discounting the evidence she rejects"). Because the ALJ's decision does not provide a proper explanation of his reasons for discounting the limitations found by Dr. Bixler, remand is required to allow for more in-depth discussion of Dr. Bixler's opinion as a whole, as well as more careful consideration of the limitations contained therein.

Additionally, the ALJ should, upon remand, ensure that proper weight be accorded to all of the opinion and other medical evidence presented in the record, and he should verify that his conclusions at all steps of the sequential evaluation process are adequately explained, in order to eliminate the need for any future remand. Indeed, the Court expresses no opinion as to whether the ALJ's RFC determination regarding Plaintiff's impairments could, in fact, be supported by the record. It is, instead, the need for further explanation that mandates the remand on this issue.

## V. Conclusion

In short, because the record does not permit the Court to determine whether the ALJ's formulation of Plaintiff's RFC is supported by substantial evidence, the Court agrees with Plaintiff's assertion that substantial evidence does not support the ALJ's decision in this case, and remand is therefore appropriate. Accordingly, the Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

s/ Alan N. Bloch<br>
United States District Judge

ecf: Counsel of record